CAROLYN SCHULER, as Adm'x of the Estate of Richard Schuler, Deceased, Plaintiff-Appellant, v. MID-CENTRAL CARDIOLOGY *et al.*, Defendants-Appellees (Robert McEntyre, Defendant).

Fourth District No. 4—99—0752

Argued March 14, 2000.—Opinion filed May 15, 2000.— Rehearing denied June 12, 2000.

David Stevens (argued), of Heller, Holmes & Associates, P.C., of Mattoon, for appellant.

Deanne F. Jones and Charles C. Hughes (argued), both of Hughes, Hill & Tenney, L.L.C., of Decatur, for appellees.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Carolyn Schuler (plaintiff) appeals a jury verdict in favor of Patrick Murphy, M.D. (Dr. Murphy), and his professional corporation, Mid-Central Cardiology (collectively referred to as defendants). Plaintiff brought this medical malpractice action after the death of her husband, Richard Schuler (Schuler). Schuler died as a result of heart vessel blockage, which occurred during "stress test" procedures being performed by Dr. Murphy. Plaintiff asserts that the circuit court committed a variety of evidentiary errors that prejudiced her case and justify reversal. We affirm the judgment in favor of defendants.

## I. BACKGROUND

On the evening of February 3, 1995, Schuler went to BroMenn Regional Medical Center complaining that he had been experiencing chest pains for two days. Robert McEntyre, M.D. (Dr. McEntyre), an emergency room (ER) physician, attended to Schuler and ordered a battery of tests. Schuler's electrocardiogram (EKG) came back abnormal, but his lab results were within normal limits. Dr. McEntyre decided to obtain a telephone consultation with a cardiologist, Dr. Murphy. The doctors agreed that Schuler's condition was stable and that a follow-up EKG should be performed. Dr. Murphy instructed Dr. McEntyre to call him again after the second EKG.

The results of Schuler's second EKG showed improvement but were still abnormal. Dr. McEntyre's initial inclination was to admit Schuler for a 23-hour observation, but, after discussing the matter with Dr. Murphy, the doctors decided that Schuler should not be hospitalized. Dr. McEntyre noted in the hospital records that Schuler was experiencing "noncardiac chest pain," and he was released with instructions to follow up with Dr. Murphy.

Dr. Murphy subsequently evaluated Schuler on February 10, 15, and 16. Dr. Murphy scheduled a stress test for February 16, which is a method of evaluating a patient's physical state before, during, and after strenuous activity. Schuler died during the stress test procedures on February 16, 1995.

Plaintiff filed suit against Mid-Central Cardiology, Dr. Murphy,

BroMenn Healthcare, and Dr. McEntyre. The suit against BroMenn Healthcare was later dismissed on plaintiff's motion. Dr. McEntyre settled with plaintiff prior to trial. The case proceeded to trial against Mid-Central Cardiology and Dr. Murphy on July 6, 1999. In essence, plaintiff claims that Dr. Murphy gave Schuler inadequate medical treatment and should not have required or permitted Schuler to submit to the stress test. The jury returned a verdict in favor of defendants. This appeal followed.

## II. ANALYSIS

Plaintiff first argues that the circuit court committed reversible error when it denied plaintiff's motion to strike the supplemental opinions of one of defendants' experts. Plaintiff also claims that the circuit court erred when it refused to permit plaintiff's expert to testify that Dr. Murphy breached the standard of care *if* he instructed Dr. McEntyre to change his diagnosis to indicate that Schuler was discharged with "noncardiac" as opposed to "cardiac" pain. Finally, plaintiff asserts that the circuit court should not have allowed defense witnesses to utilize a demonstrative exhibit to explain the evaluation process doctors and cardiologists use with patients complaining of chest pain.

### A. The Supplemental Opinions and Related Testimony of Defendants' Experts Were Properly Admitted

Defendants initially disclosed Dr. Gerald Wolff and Dr. Joseph Messer as opinion witnesses who would testify at trial on their behalf. Defendants made generic opinion disclosures, indicating that, based upon the doctors' review of the records and their education and experience, they would testify that Dr. Murphy complied with the standard of care applicable to him in his care and treatment of Schuler. Plaintiff had not issued Supreme Court Rule 213(g) interrogatories requesting this information; rather, the disclosure was made pursuant to the circuit court's case-management order. 177 Ill. 2d R. 213(g); 166 Ill. 2d R. 218. The case-management order required the parties to disclose the "gist" of their opinion witnesses' testimony. The case-management order also provided for disclosure of opinion witnesses and completion of discovery pursuant to Rule 218(c). 166 Ill. 2d R. 218(c) (completion of discovery not later than 60 days before trial).

At the time of defendants' initial disclosure, plaintiff's opinion witnesses had already been deposed. Subsequently, Dr. Wolff and codefendant Dr. McEntyre's two opinion witnesses were deposed. Dr. Messer's discovery deposition was taken on March 19, 1999, as the final opinion witness deposition in the case. The deposition was brief, spanning only 22 pages.

Defendants subsequently served a "supplemental disclosure of opinions," setting forth detailed opinions that Dr. Messer would provide at trial. These supplemental opinions were in addition to those elicited at Dr. Messer's deposition. The certificate of service indicates that the supplemental disclosure was sent via facsimile and regular mail to plaintiff and codefendant on Thursday, May 6, 1999, 61 days before trial. However, the supplemental disclosure was not file-stamped by the circuit court until Monday, May 10, 1999, which was 57 days before trial.

In response, plaintiff filed a motion to strike the supplemental disclosure and to bar further opinions. Plaintiff argued that (1) Dr. Messer's deposition had been taken, (2) the time for disclosure of opinions was past, (3) the additional opinions were not provided in either the initial disclosure or at the time of the discovery deposition, and (4) the late disclosure would not allow time for an additional deposition, to forward those disclosures to plaintiff's opinion witnesses, and to disclose rebuttal opinions. Plaintiff asked the circuit court to bar Dr. Messer from giving any opinions other than those disclosed in his discovery deposition.

Defendants replied to plaintiff's motion to strike, asserting that their disclosure was appropriate pursuant to Supreme Court Rule 213. 177 Ill. 2d R. 213. Defendants contend that the supplemental disclosure was necessary to address Dr. Messer's opinions that plaintiff did not specifically cover during the deposition. Further, they argue that the rules of discovery do not require them to conduct their own direct examination of Messer at the deposition, and the written supplemental disclosure was the appropriate procedure. Defendants also allege that none of the supplemental opinions disclosed would cause undue surprise or prejudice the plaintiff.

At a pretrial hearing on July 2, 1999, the circuit court heard arguments relating to various motions *in limine*, including plaintiff's motion to bar Messer's supplemental opinions. The circuit court denied plaintiff's motion. The circuit court held that although the supplemental opinions were more specific than those previously provided, no surprise or prejudice to plaintiff resulted that would warrant striking Dr. Messer's additional disclosures. The circuit court granted plaintiff leave to redepose Dr. Messer in light of the supplemental disclosure. Plaintiff declined, claiming there was insufficient time before trial to take the additional deposition and offer additional rebuttal testimony from plaintiff's own experts. On appeal, plaintiff argues that the circuit court's decision was an abuse of discretion. *Warrender v. Millsop*, 304 Ill. App. 3d 260, 268, 710 N.E.2d 512, 518 (1999) (decision whether to exclude witness as sanction for nondisclosure will not be reversed absent abuse of discretion). We disagree.

■ We recently reiterated that the goal of Illinois' discovery process is full disclosure. Discovery is not a tactical game but is intended to be a mechanism for the ascertainment of truth for the purpose of promoting either a fair settlement or a fair trial. *Boland v. Kawasaki Motors Manufacturing Corp.*, 309 Ill. App. 3d 645, 651, 722 N.E.2d 1234, 1239 (2000). More specifically, the purpose of the discovery rules requiring timely disclosure of expert witnesses and their opinions is to avoid surprise and to discourage tactical gamesmanship. *Boland*, 309 Ill. App. 3d at 651, 722 N.E.2d at 1239-40. At the outset, we note that we find no basis in the record to indicate that defendants made their supplemental disclosure in an attempt to gain an unfair tactical advantage over plaintiff.

■ Illinois Supreme Court Rule 213(g) provides that, upon written interrogatory, a party must disclose the qualifications of an opinion witness, including the subject matter upon which the opinion witness will testify, as well as the conclusions and opinions of the opinion witness and the bases therefor, and provide all reports of the opinion witness. 177 Ill. 2d R. 213(g). Rule 213(g) is designed to promote disclosure and to allow the opponent to take a thorough deposition of an opinion witness.

In a typical case, Rule 213(g) interrogatories are issued; the opponent answers the interrogatories in compliance with Rules 213(g)(i) through (iii); the issuing party reviews the answers and resolves any disputes relating to the adequacy of the disclosures that might frustrate the party's ability to take a thorough deposition, *i.e.*, noncompliance with Rules 213(g)(i) through (iii); and the opinion witness depositions proceed and all opinions to be offered at trial are disclosed. If this sequence of events is followed, postdeposition supplemental disclosure of opinions would rarely be needed. While certain cases may require postdeposition supplemental disclosure, they should be the exception, rather than the rule. See *Lucht v. Stage 2, Inc.*, 239 Ill. App. 3d 679, 692, 606 N.E.2d 750, 759 (1992) (an expert, acting in good faith, may know more at the end of discovery than at the beginning).

■ Here, however, defendants' initial disclosure of opinion witnesses and the "gist" of their opinions was not made in response to written Rule 213(g) interrogatories but, rather, was in response to the circuit court's case-management order. Plaintiff proceeded with Dr. Messer's deposition, knowing only that Dr. Messer believed Dr. Murphy complied with the applicable standard of care (the ultimate conclusion every medical malpractice defense expert reaches). Dr. Messer's deposition was extremely brief. Following the deposition and a review of the transcript, defendants found themselves in a difficult situation.

Dr. Messer had many opinions that were helpful to their case but had not been brought out at the deposition. In an attempt to preserve their ability to utilize these opinions, defendants disclosed the additional opinions in written form.

Defendants assert their supplemental disclosure was simply intended to comply with Rule 213. Had defendants failed to supplement their initial disclosure with the opinions not touched upon at Dr. Messer's deposition, an argument could have been made that the additional opinions were barred under Rule 213(i):

> "If a deposition of an opinion witness is taken, the witness' testimony at trial will be limited to the opinion expressed therein, in addition to those opinions identified in answers to Rule 213(g) interrogatories." 177 Ill. 2d R. 213(i).

The express language of Rule 213(i) states that only those opinions disclosed in written form or those elicited at deposition will be allowed at trial. We agree with defendants that the rules of discovery do not require them to conduct a direct examination of their expert at the deposition. However, parties should not be permitted to withhold opinions throughout discovery and then ambush the opponent on the eve of trial with more specific opinions. The party propounding the expert is generally required to disclose the expert's opinion *before* the deposition, not at the deposition.

While we do not condone defendants' method of disclosure, we recognize that both parties can be faulted for the situation that arose here. Defendants should have initially provided detailed opinion witness disclosures despite the fact that they were only required to disclose the "gist" of those opinions pursuant to the case-management order. On the other hand, if plaintiff determined that defendants' initial disclosure was not sufficient to permit a thorough deposition of Dr. Messer, plaintiff should have required defendants to provide more detailed disclosure before proceeding with the deposition. Plaintiff opted to take a brief deposition, without exhausting the bases for Dr. Messer's ultimate opinion that defendants complied with the standard of care when treating Schuler.

The circuit court considered the facts relating to the progress of discovery in this matter, as well as the nature and content of the supplemental disclosures, before concluding that the supplemental opinions would not cause undue surprise or prejudice to plaintiff. As we previously noted, plaintiff was also given the opportunity to redepose Dr. Messer, but she declined. We have reviewed the record and conclude that, under these facts, the circuit court's decision was within its discretion.

■ ■ Plaintiff also argues that the supplemental disclosure should

have been barred as untimely pursuant to Rule 218(c). 166 Ill. 2d R. 218(c). As we noted, the supplemental disclosure was sent via facsimile and regular mail to plaintiff on Thursday, May 6, 1999, 61 days before trial. It was file-stamped the following Monday, 57 days before trial. Illinois Supreme Court Rule 218(c) provides:

> "All dates set for the disclosure of opinion witnesses and the completion of discovery shall be chosen to ensure that discovery will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence." 166 Ill. 2d R. 218(c).

Supreme Court Rules 213(g), 213(i) and 218(c) work together to ensure that, upon written interrogatory and no later than 60 days prior to the anticipated date of trial, parties disclose the subject matter, conclusions, opinions, qualifications, and reports of their opinion witnesses. *Warrender*, 304 Ill. App. 3d at 266, 710 N.E.2d at 516. Plaintiff initially argued that the court "filing date" of the supplemental opinions (57 days before trial) made them untimely. However, even assuming that is correct, plaintiff concedes that the circuit court has discretion to alter its case-management orders to permit otherwise untimely disclosures. While we discourage litigants from making "11th-hour" disclosures, we find that defendants' disclosure served via facsimile and regular mail 61 days before trial was permissible. Further, the circuit court was familiar with the parties and the progress of discovery in this matter. It was within the circuit court's discretion to find defendants' supplemental disclosure was timely.

■ As a final matter related to Dr. Messer's supplemental opinions, we note that plaintiff waived any objection to the testimony by failing to object at trial. The denial of a motion *in limine* does not preserve an objection to disputed evidence later introduced at trial. The moving party is obligated to object to the evidence when it is offered at trial or the objection will be waived. *Cunningham v. Millers General Insurance Co.*, 227 Ill. App. 3d 201, 206, 591 N.E.2d 80, 83 (1992).

Here, plaintiff referred to her pretrial motion to bar Dr. Messer's supplemental opinion as a "motion to strike" rather than a "motion *in limine*." That fact does not alter our finding of waiver. See *People v. Drum*, 307 Ill. App. 3d 743, 746-47, 718 N.E.2d 302, 305-06 (1999) (State's pretrial evidentiary motion had purpose and effect of motion *in limine* and would be treated like motion *in limine* despite different title).

A motion *in limine* is a pretrial motion that seeks an order excluding inadmissible evidence and prohibiting questions concerning such evidence, without the necessity of having the questions asked and objections thereto made in front of the jury. *People v. Williams*, 188 Ill.

2d 365, 368, 721 N.E.2d 539, 542 (1999); see also M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 103.9 (7th ed. 1999). A motion *in limine* merely presents, in a pretrial setting, an issue of admissibility of evidence that is likely to arise at trial. As such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial. When a motion *in limine* is made, the trial judge has broad discretion to grant or deny the motion or choose not to entertain the motion at all. *People v. Owen*, 299 Ill. App. 3d 818, 823, 701 N.E.2d 1174, 1178 (1998). If the trial judge considers the motion and denies it, the unsuccessful movant must specifically object to the evidence when it is offered at trial. *Romanek-Golub & Co. v. Anvan Hotel Corp.*, 168 Ill. App. 3d 1031, 1040, 522 N.E.2d 1341, 1347 (1988).

Here, plaintiff did not object to Dr. Messer's testimony at trial. Thus, plaintiff waived this issue on appeal.

### B. Plaintiff's Expert's Opinion That Dr. Murphy Breached the Standard of Care *if* He Instructed Dr. McEntyre To Record That Schuler Was Experiencing "Noncardiac Chest Pain" Was Properly Stricken

At trial, the circuit court sustained defendants' objection to Dr. William Wehrmacher's opinion that Dr. Murphy breached the standard of care if he instructed Dr. McEntyre to indicate "noncardiac chest pain" as the diagnosis in Schuler's medical records. Plaintiff asserts that the ruling was in error. We disagree.

Defense counsel objected to plaintiff's question on the grounds that no factual support was shown for the proposition that Dr. Murphy dictated Dr. McEntyre's diagnosis. Plaintiff's counsel admitted that the question included the caveat "if" and that a basis in evidence would have to exist for asking the question. The circuit court allowed the questioning to proceed, but reserved ruling, stating that unless plaintiff established some evidence to support the question, the jury would be instructed to disregard it.

Dr. Wehrmacher proceeded to testify that *if* Dr. Murphy consulted with Dr. McEntyre and instructed him to note in the records that Schuler was having "noncardiac pain" without attributing such a statement to Dr. Murphy himself, it would have been a deviation from the standard of care. Plaintiff was attempting to establish that Dr. McEntyre initially diagnosed Schuler with cardiac pain, but that Dr. Murphy disagreed and required Dr. McEntyre to alter his diagnosis. The problem with plaintiff's claim is that it lacks support in the record.

At Dr. McEntyre's deposition, he was asked whether he believed

that Schuler was having cardiac chest pain on February 3, 1995. Dr. McEntyre responded that he was more convinced that Schuler was having liver and other gastrointestinal problems. Dr. McEntyre's initial inclination was to admit Schuler for a 23-hour observation, but after talking with Dr. Murphy, they decided not to hospitalize Schuler. Before discharging Schuler, Dr. McEntyre wrote "noncardiac chest pain" on the ER record and instructed Schuler to follow up with Dr. Murphy.

Dr. McEntyre testified at trial that if he had believed Schuler was having cardiac problems, he would not have agreed to discharge him. Plaintiff's counsel attempted to impeach Dr. McEntyre with his discovery deposition in which he testified that, at the time he discharged Schuler, Dr. McEntyre thought Schuler had cardiac chest pain but wrote "non" in the record as opposed to "possible," which in hindsight he thought he should have written. However, plaintiff did not establish that Dr. Murphy instructed Dr. McEntyre to provide the "noncardiac chest pain" diagnosis. Rather, Dr. McEntyre's testimony was that he wrote his own impressions down in the medical records after consulting with Dr. Murphy.

Dr. McEntyre further testified that he and Dr. Murphy together decided it was appropriate for Schuler to be discharged. He believed it was appropriate to discharge Schuler based upon his findings and clinical impressions. Dr. McEntyre stated that there was no disagreement between Dr. Murphy and himself regarding Schuler's discharge. Although Dr. McEntyre subsequently testified that he should have put "possible" instead of "non" before the phrase "cardiac chest pain," he did not attribute that decision to Dr. Murphy.

After considering the evidence presented, the circuit court instructed the jury that it was to disregard Dr. Wehrmacher's testimony regarding the possibility that Dr. Murphy instructed Dr. McEntyre to change Schuler's diagnosis from "cardiac" to "noncardiac pain." The circuit court also refused to give plaintiff's instruction 11A, which stated that Dr. Murphy consulted with Dr. McEntyre and instructed Dr. McEntyre to note on Schuler's chart that Schuler's problems were noncardiac even though Dr. McEntyre was of the opinion that Schuler's problems were cardiac in nature.

■ In general, an expert cannot base opinions on mere conjecture or guess. *Dyback v. Weber*, 114 Ill. 2d 232, 244, 500 N.E.2d 8, 13 (1986). In other words, experts cannot base opinions on what may have occurred or what the expert believed might have happened in a particular case. See *Dyback*, 114 Ill. 2d at 244, 500 N.E.2d at 13-14. Further, an inference of negligence cannot be established on inferences that are themselves speculative in nature. *McCormick v. Maplehurst Winter Sports, Ltd.*, 166 Ill. App. 3d 93, 100, 519 N.E.2d 469, 474 (1988).

We have previously held that it is proper to strike an expert's opinion when it is unsupported by the evidence. See *Coffey v. Brodsky*, 165 Ill. App. 3d 14, 24-25, 518 N.E.2d 638, 644-45 (1987). Here, plaintiff did not establish that Dr. Murphy told Dr. McEntyre to alter his diagnosis. In fact, plaintiff concedes that Dr. McEntyre never testified that Dr. Murphy told him to reflect noncardiac pain in the ER record. Nonetheless, plaintiff suggests that sufficient ambiguity exists in Dr. McEntyre's testimony to create a question of fact for the jury to resolve.

■ The determination as to what is relevant evidence is a matter within the sound discretion of the circuit court, and the court's determination will not be disturbed by the court on review absent an abuse of that discretion. *Hartman v. Pittsburgh Corning Corp.*, 261 Ill. App. 3d 706, 723, 634 N.E.2d 1133, 1145 (1994). No direct evidence was presented that Dr. Murphy told Dr. McEntyre to change the records and, contrary to plaintiff's assertion, no circumstantial evidence supported this proposition either.

■ Circumstantial evidence involves evidence offered to establish a fact of consequence where an inference in addition to the truth of the matter stated needs to be made. See *Campbell v. Wagner*, 303 Ill. App. 3d 609, 612, 708 N.E.2d 539, 542 (1999). Plaintiff's case against Dr. McEntyre and Dr. Murphy centered on her theory that Schuler was not treated for a cardiac condition on February 3 when, in fact, he was suffering from unstable angina. Each of plaintiff's experts testified that the medical records from February 3 support the diagnosis of unstable angina, yet Drs. McEntyre and Murphy failed to treat Schuler for that condition. However, plaintiff's own ER expert, Dr. C.T. Fletcher, agreed that Dr. McEntyre treated Schuler as though Schuler was having noncardiac chest pain. Thus, nothing supports the testimony that Dr. Murphy breached the standard of care by instructing Dr. McEntyre to change the diagnosis. Plaintiff's attempt to attribute the February 3, 1995, diagnosis to Dr. Murphy was not supported by the evidence. Instructing the jury to disregard that testimony was appropriate.

■ Additionally, the trial court properly refused plaintiff's jury instruction on this issue. An instruction is justified if it is supported by some evidence in the record. The circuit court has discretion in deciding which issues are raised by the evidence. See *Friedman v. Park District*, 151 Ill. App. 3d 374, 388, 502 N.E.2d 826, 837 (1986). The circuit court's determination of which jury instructions should be given will not be disturbed on appeal absent an abuse of discretion. *Campbell*, 303 Ill. App. 3d at 611-12, 708 N.E.2d at 541-42. Here, no evidence in the record supported plaintiff's instruction. Thus, the

circuit court's refusal to give the instruction was within its discretion.

## C. It Was Proper To Use a Demonstrative Exhibit To Assist the Jury in Understanding the Medical Testimony Presented

■ Plaintiff's final argument on appeal is that the circuit court should not have allowed the use of defendants' exhibit No. 6 as a demonstrative exhibit at trial. Exhibit No. 6 was a "risk stratification" chart that was prepared by defense counsel. The risk stratification chart is a diagram, representative of the evaluation process that a physician and/or cardiologist would go through when a patient presents with chest pain. Plaintiff objected to use of the exhibit on the basis that it was argumentative and not previously disclosed. Following examination of the exhibit and argument on the objection, the circuit court overruled plaintiff's objection and allowed the chart to be used for demonstrative purposes only. After reviewing the exhibit and the testimony related to risk stratification, we find that it was within the circuit court's discretion to permit the use of the exhibit as demonstrative evidence.

Demonstrative evidence has no probative value in itself, but serves as a visual aid to the jury in comprehending the verbal testimony of a witness. *Herman v. Will Township*, 284 Ill. App. 3d 53, 61, 671 N.E.2d 1141, 1147 (1996). Courts look favorably upon the use of demonstrative evidence, because it helps the jury understand the issues raised at trial. *People v. Burrows*, 148 Ill. 2d 196, 252, 592 N.E.2d 997, 1022 (1992). The circuit court has discretion to determine whether a party may present demonstrative evidence to clarify an expert's testimony. *Herman*, 284 Ill. App. 3d at 61, 671 N.E.2d at 1147. The circuit court's ruling regarding the admissibility of demonstrative evidence will not be disturbed by a reviewing court absent a clear abuse of discretion. *Herman*, 284 Ill. App. 3d at 62, 671 N.E.2d at 1147. The primary considerations in determining whether demonstrative evidence should be allowed are relevancy and fairness. *Hernandez v. Schittek*, 305 Ill. App. 3d 925, 931, 713 N.E.2d 203, 208 (1999).

Plaintiff's own expert acknowledged that coronary disease risk stratification protocols were commonly accepted in the medical community. Dr. Murphy and Dr. Wolff testified similarly. Thus, the risk stratification chart was relevant.

Plaintiff argues that the use of the risk stratification chart was unfair because it was argumentative and took plaintiff by surprise because it was not previously disclosed. Plaintiff admits that the subject matter of the chart was not surprising; rather, the introduction of a "concrete object," *i.e.*, the chart itself, "ambushed" plaintiff. Under these facts, we disagree. The chart was simply a visual aid used

to explain the risk stratification process, a concept the witnesses would testify about with or without the exhibit. Defendants' use of the exhibit was not unfair. Further, the circuit court's decision allowing the use of defendants' exhibit No. 6 as demonstrative evidence was not an abuse of discretion.

## III. CONCLUSION

Based upon the foregoing reasons, we affirm the judgment in favor of defendants.

Affirmed.

STEIGMANN and MYERSCOUGH, JJ., concur.