LARRY SCASSIFERO, Plaintiff-Appellant, v. SCOTT E. GLASER *et al.*, Defendants-Appellees.

Second District   No. 2—01—0969

Opinion filed September 12, 2002.

Martin J. Lucas and Andrew M. DeLuca, both of Anesi, Ozmon, Rodin, Novak & Kohen, Ltd., of Chicago, for appellant.

Robert Marc Chemers, Brian T. Henry, Scott L. Howie, and Genevieve L. Labuda, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellees Scott E. Glaser and Hinsdale Anesthesia Associates, Ltd.

JUSTICE GROMETER delivered the opinion of the court:

Plaintiff, Larry Scassifero, appeals a jury verdict in favor of defendants, Scott E. Glaser, M.D., and Hinsdale Anesthesia Associates, Ltd. Plaintiff brought this medical malpractice action alleging that Dr. Glaser negligently performed an epidural injection, causing plaintiff to develop an epidural abscess. On appeal, plaintiff asserts that the trial court committed a variety of evidentiary errors that justify reversal. For the reasons that follow, we reverse and remand the cause for a new trial.

## I. BACKGROUND

On July 8, 1996, plaintiff underwent a discectomy to relieve pain in his back. The surgery was performed by Dr. Michael Zindrick, an orthopaedic surgeon. The surgery provided plaintiff with relief for only a couple of days. Dr. Zindrick referred plaintiff to Dr. Glaser, an anesthesiologist specializing in pain management and a partner in Hinsdale Anesthesia Associates, Ltd.

Dr. Glaser treated plaintiff on July 18, 1996, at Hinsdale Hospital. At that time, plaintiff complained of lower back pain radiating into his right buttock and right thigh. On an increasing scale of 1 to 10, plaintiff rated his pain at level 8. Dr. Glaser took a medical history from plaintiff and reviewed plaintiff's medical records. Upon examination, Dr. Glaser noted that plaintiff was in severe pain and had trouble walking. Plaintiff's neurological examination and reflexes were normal and plaintiff was nontender to palpation. Dr. Glaser observed no signs of infection. Dr. Glaser diagnosed plaintiff with ridiculer pain and sympathetically mediated pain.

Based on his diagnosis, Dr. Glaser decided that plaintiff was a candidate for an epidural injection. Dr. Glaser attempted the procedure using two different approaches. Initially, Dr. Glaser tried the midline approach. Dr. Glaser began by administering an anesthetic. Dr. Glaser made numerous unsuccessful attempts to get a needle into the epidural space. Throughout the procedure, Dr. Glaser administered additional anesthesia as needed while the epidural needle was still in place. In attempting the injection, Dr. Glaser would "reangulate" the needle by partially withdrawing it to change the angle. Dr. Glaser made two or three reangulation attempts. However, he repeatedly struck bone, so he decided to abort the midline approach and try the paramedian approach.

Before commencing the paramedian approach, Dr. Glaser took a

break. The parties offered differing recollections of the details of the break. Dr. Glaser did not recall leaving the room during the break, which he estimated lasted only five minutes. Plaintiff testified that the break lasted 10 minutes and that Dr. Glaser left the room during the break. Evelyn Scassifero, plaintiff's wife, testified that she entered the room during the break, and Dr. Glaser was not present during the time she was in the room. Janice Stevenson, the nurse who assisted Dr. Glaser with the epidural injection, testified that she has no recollection of either Dr. Glaser or herself leaving the room during the procedure. Stevenson also could not recall if Dr. Glaser even took a break. In any event, using the paramedian approach, Dr. Glaser was able to reach the epidural space. Upon completion of the procedure, plaintiff experienced significant pain relief. Based on a scale of 1 to 10, plaintiff rated his pain at level 2.

Within a few days of the procedure, plaintiff developed a fever and began to experience pain in his back. Plaintiff sought emergency medical treatment at Hinsdale Hospital, where he was later admitted. Plaintiff was diagnosed with an epidural abscess. Following his discharge from the hospital, plaintiff was given intravenous medication, including antibiotics that he injected through a shunt in his arm. Plaintiff subsequently experienced a second episode of fever. As a result, he was again hospitalized and prescribed a more intense dose of antibiotics.

Plaintiff then filed the instant suit against Dr. Glaser and Hinsdale Hospital. Plaintiff later amended his complaint to add Hinsdale Anesthesia Associates, Ltd., as a defendant. In essence, plaintiff alleged that he developed the epidural abscess as a result of Dr. Glaser's failure to properly perform the epidural injection and the failure to maintain a sterile field. Plaintiff alleged that Hinsdale Hospital and Hinsdale Anesthesia Associates, Ltd., were vicariously liable for Dr. Glaser's alleged negligence. Thereafter, Hinsdale Hospital (codefendant) settled with plaintiff, and the case proceeded to trial against Dr. Glaser and Hinsdale Anesthesia Associates, Ltd. (collectively, defendants). As noted above, the jury returned a verdict in defendants' favor. This appeal ensued.

## II. ANALYSIS

### A. Evidence Regarding Contamination of the Equipment Tray

Plaintiff first argues that the trial court improperly limited evidence regarding contamination of the sterile field. More specifically, plaintiff maintains that the trial court improperly excluded his expert witness, Dr. Steven Minore, from testifying regarding the alleged contamination of the epidural equipment tray during Dr. Glaser's alleged absence from the room where the injection was performed.

In his complaint, plaintiff alleged that Dr. Glaser failed to maintain a sterile field during the epidural injection, causing him to develop an abscess. During his discovery deposition, Dr. Minore testified that Dr. Glaser breached the standard of care by leaving the room during the procedure. Dr. Minore opined that under such circumstances there was no guarantee that the equipment tray used for the procedure remained sterile. Prior to trial, defendants filed a motion *in limine* seeking to bar Dr. Minore from rendering any opinions regarding potential contamination of the epidural equipment tray during the alleged absence of Dr. Glaser from the procedure room. At a hearing on the motion, defendants argued that any testimony that the equipment tray was contaminated during Dr. Glaser's absence would constitute speculation because there was no factual evidence that the tray was contaminated. Plaintiff countered that there was sufficient circumstantial evidence to suggest that the equipment tray was contaminated. The trial court granted defendants' motion, stating in relevant part:

"I'm going to grant that based upon the fact that it's subjective. There's no actual proof, theory that that's the contamination.

Taking into account of having read the doctor's deposition indicating that it was a difficult situation, there was no actual proof that he had left the room or that precautions were not taken, that apparently the Court learned that even the wife was brought into the room, anything could happen.

So, basically, the doctor or the expert, Dr. Minore, said that he merely went to the deposition, read the other deposition. He had no knowledge as to Dr. Glaser having left the room.

So at this—I am going to grant that motion."

Following Dr. Minore's testimony at trial, and outside the presence of the jury, plaintiff made an offer of proof with respect to Dr. Minore. Dr. Minore believed within a reasonable degree of medical certainty that, if Dr. Glaser left the examining room at any time while performing the epidural block on plaintiff, there would have been a breach of the standard of care for two reasons. First, the sterile area around the patient could not be guaranteed. Second, the sterility of the surgery kit could not be guaranteed. Dr. Minore opined that the kit could become contaminated during the break if the patient coughs or sneezes or if someone reaches over the kit. He testified that the standard of care thus dictates that if a physician takes a break from a procedure, he should reprepare, redrape, and use a fresh kit and medications. Dr. Minore also testified that, if the physician touched anything with his gloves during the break, he should reglove. Finally, Dr. Minore testified that, assuming Dr. Glaser and his nurse left the examining room for a period of time, came back, and proceeded with

the epidural injection using the same tray and the same epidural needle, the breach of sterility would be the proximate cause of plaintiff's epidural abscess.

Plaintiff contends that the trial court erred in barring Dr. Minore's opinions regarding contamination of the epidural equipment tray. According to plaintiff, such testimony was admissible because it had a sufficient basis both in the record and in medical and scientific theory. Defendants counter that it was within the discretion of the trial court to disallow such evidence because there was no evidence to support such testimony.

■ Expert testimony is admissible if the proffered expert is qualified as an expert by knowledge, skill, experience, training, or education and the testimony will assist the trier of fact in understanding the evidence. *Turner v. Williams*, 326 Ill. App. 3d 541, 552 (2001). The decision to admit expert testimony lies within the sound discretion of the trial court. *Donaldson v. Central Illinois Public Service Co.*, 313 Ill. App. 3d 1061, 1076 (2000), *aff'd*, 199 Ill. 2d 63 (2002). Therefore, we will not reverse an erroneous ruling unless the error was prejudicial or the result of the trial has been materially affected. *Hiscott v. Peters*, 324 Ill. App. 3d 114, 122 (2001).

Here, plaintiff sought to introduce testimony from Dr. Minore that, if Dr. Glaser and his nurse left the examining room for a period of time, came back, and proceeded with the epidural injection using the same equipment tray, the breach of sterility would be the proximate cause of plaintiff's epidural abscess. As previously noted, the trial court would not allow such testimony on the basis that there was "no actual proof that [Dr. Glaser] had left the room or that precautions were not taken."

■ Although an expert cannot base opinions on mere conjecture or guess (*Schuler v. Mid-Central Cardiology*, 313 Ill. App. 3d 326, 335 (2000); *Carter v. Johnson*, 247 Ill. App. 3d 291, 296 (1993)), an expert may testify as to possible causes of an injury based on facts assumed to be true (*Conners v. Poticha*, 293 Ill. App. 3d 944, 950 (1997)). The admission of an expert's testimony requires the proponent to lay an adequate foundation establishing that the information upon which the expert bases his opinion is reliable. *Hiscott*, 324 Ill. App. 3d at 122. The trial court's decision to disallow Dr. Minore's testimony regarding contamination of the epidural equipment tray was based on its finding that Dr. Minore had no knowledge of Dr. Glaser having left the room. However, our review of Dr. Minore's deposition testimony reveals otherwise.

At Dr. Minore's deposition, he testified that, in preparation for his deposition, he reviewed plaintiff's medical records, Dr. Glaser's inter-

rogatory answers, Dr. Glaser's deposition, and plaintiff's deposition. Dr. Minore then opined that, in leaving the room, Dr. Glaser breached the standard of care because there was no guarantee that the equipment tray remained sterile during his absence. Dr. Minore explained that, if Dr. Glaser had remained in the room and was observing the equipment tray, the issue of contamination would be moot. However, Dr. Minore recalled that there was conflicting testimony as to whether Dr. Glaser left the room where the injection was being performed. Dr. Minore remembered plaintiff stating that Dr. Glaser left the room. Dr. Minore testified that his opinion was based on what he read in plaintiff's deposition. Indeed, according to plaintiff's discovery deposition, Dr. Glaser took a 10-minute break, during which Dr. Glaser left the room. Plaintiff further testified that he did not recall a nurse being in the room when Dr. Glaser returned. Thus, despite the trial court's finding to the contrary, there was an evidentiary basis for Dr. Minore's opinion.

Defendants argue that, even if Dr. Glaser left the room during the procedure, there was no evidence that Dr. Glaser did anything during his absence that could have resulted in contamination. However, the assumptions that support an expert's opinion may be supported by circumstantial evidence. *Nelson v. Speed Fastener, Inc.*, 101 Ill. App. 3d 539, 544 (1981). In the present case, there was ample circumstantial evidence to support Dr. Minore's opinion that the sterile field was contaminated as a result of Dr. Glaser's absence. For instance, Dr. Minore testified at trial and in his deposition that plaintiff's medical records showed no indication that plaintiff was febrile prior to or at the time of the procedure. Dr. Minore further testified that plaintiff's medical records indicated that at the time the epidural injection was performed there was no indication of drainage at the surgical incision from the July 8, 1996, surgery. In addition, plaintiff had no complaints of localized back pain prior to the time of the surgery that were suggestive of an infection. Dr. Minore stated in his deposition that epidural abscesses usually develop within three days of an invasive procedure. Here, just days after the epidural injection plaintiff developed a fever and began to experience back pain. Plaintiff testified that the pain differed from the pain he experienced prior to the injection.

■ In light of this evidence, we are convinced that the trial court abused its discretion in barring Dr. Minore's testimony regarding potential contamination. Dr. Minore's opinion was based on facts assumed to be true which were supported by ample evidence in the record. Once this evidence was presented, it was defendants' burden to point out weaknesses in the expert's testimony, and it was for the

jury to decide what weight, if any, to give to the expert's opinion. *Hawn v. Fritcher*, 301 Ill. App. 3d 248, 253 (1998). We are also convinced that the exclusion of Dr. Minore's opinion resulted in prejudice because it related to plaintiff's theory that the abscess was caused by a breach in the sterile field. Accordingly, we conclude that plaintiff is entitled to a new trial.

Defendants cite two cases that they claim support their argument that Dr. Minore's opinion regarding contamination is based on sheer speculation. First, defendants cite *Schuler*, 313 Ill. App. 3d 326. In *Schuler*, the plaintiff alleged that the defendant had instructed another physician to enter a diagnosis of "noncardiac chest pain" on the decedent's medical chart. At trial, the circuit court sustained the defendant's objection to plaintiff's expert's opinion that the defendant breached the standard of care "if" he had given such an instruction. The appellate court affirmed the trial court's decision on the basis that there was no evidence, direct or circumstantial, to support the proposition that such an instruction had been given. *Schuler*, 313 Ill. App. 3d at 336. In *Reed v. Jackson Park Hospital Foundation*, 325 Ill. App. 3d 835 (2001), the other case discussed by defendants, the trial court granted the defendant's motion *in limine* to bar the plaintiff's expert from testifying regarding the proximate cause of the plaintiff's injury. The appellate court affirmed, finding that the plaintiff's expert's opinions were based on nothing more than an educated guess. In contrast to *Schuler* and *Reed*, Dr. Minore's opinion regarding contamination of the epidural equipment tray was not based on mere guess or conjecture. Rather, as we discuss above, there was a sufficient evidentiary basis to support Dr. Minore's opinion. As such, defendants' reliance on *Reed* and *Schuler* is unpersuasive.

Although we are remanding this cause for a new trial, we address the remaining issues raised by plaintiff because they are likely to arise on remand. However, we include only one of these issues in the publishable portion of this opinion.

### B. Admission of Testimony of Expert Witnesses

Plaintiff claims that the trial court erred when it refused to bar the testimony of two of defendants' opinion witnesses, Dr. George Cybulski and Dr. Chris Costas.

■ In addressing plaintiff's arguments, we are guided by the Illinois Supreme Court rules on discovery. The discovery rules are mandatory rules of procedure that courts and counsel must follow. *Warrender v. Millsop*, 304 Ill. App. 3d 260, 265 (1999). Relevant here are those rules pertaining to the timely disclosure of expert witnesses and their opinions. The purposes of such rules are to avoid surprise

and discourage tactical gamesmanship. *Boland v. Kawasaki Motors Manufacturing Corp.*, 309 Ill. App. 3d 645, 651 (2000); see also 177 Ill. 2d R. 213(g), Committee Comments, at xxx-xxxi. We note that the admission of such evidence is within the trial court's discretion and will not be reversed absent an abuse of that discretion. *Copeland v. Stebco Products Corp.*, 316 Ill. App. 3d 932, 937 (2000).

■ Supreme Court Rule 213(g) explicitly states that upon written interrogatory a party must disclose the subject matter, conclusions, opinions, bases, qualifications, and all reports of a witness who will offer opinion testimony. 177 Ill. 2d R. 213(g); *Schuler*, 313 Ill. App. 3d at 331. Rule 213(i) imposes on a party a duty to seasonably supplement discovery responses whenever new or additional information becomes known to the party. 177 Ill. 2d R. 213(i); *Athans v. Williams*, 327 Ill. App. 3d 700, 702 (2002). Also pertinent to our discussion is Rule 218(c), which provides in part:

> "All dates set for the disclosure of opinion witnesses and the completion of discovery shall be chosen to ensure that discovery will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence." 166 Ill. 2d R. 218(c).

Rules 213(g), 213(i), and 218(c) work together to ensure that, upon written interrogatory and no later than 60 days prior to the anticipated date of trial, the parties disclose the subject matter, conclusions, opinions, bases, qualifications, and all reports of a witness who will offer opinion testimony. 177 Ill. 2d Rs. 213(g), (i); 166 Ill. 2d R. 218(c); *Warrender*, 304 Ill. App. 3d at 266. With these considerations in mind, we turn to each of plaintiff's arguments.

### 1. Testimony of Dr. George Cybulski

Plaintiff claims that the trial court erred when it refused to bar the testimony of Dr. George Cybulski, one of defendants' expert opinion witnesses. Plaintiff challenges the admission of Dr. Cybulski's testimony on two grounds. First, he claims that defendants failed to disclose Dr. Cybulski as an opinion witness in a timely manner. Second, plaintiff argues that defendants neglected to provide the bases of Dr. Cybulski's testimony.

### a. *Timeliness*

■ Initially, we note that plaintiff waived any argument that the disclosure of Dr. Cybulski's testimony was untimely. A trial court's ruling on a pretrial motion is subject to reconsideration throughout the trial. *Ford v. Herman*, 316 Ill. App. 3d 726, 736 (2000). Accordingly, a party who, prior to trial, unsuccessfully moves to bar the introduction of certain evidence must then object to the evidence

when it is offered at trial. *Ford*, 316 Ill. App. 3d at 736. In this case, plaintiff filed a pretrial motion seeking to bar Dr. Cybulski's testimony on the basis that defendants' disclosure of Dr. Cybulski as an opinion witness was untimely and prejudicial. The trial court denied plaintiff's motion. Plaintiff did not renew his objection on these grounds when Dr. Cybulski was called to testify at trial. Therefore, plaintiff waived consideration of this issue on appeal.

Nevertheless, waiver is an admonition on the parties and not a limitation of this court's jurisdiction. *People v. McKay*, 282 Ill. App. 3d 108, 111 (1996). The issue raised by plaintiff, whether a litigant may supplement its answers to a Rule 213 interrogatory to name a witness previously identified by a co-litigant who is no longer a party to the litigation, appears to be an issue of first impression. Accordingly, we elect to address it here.

Plaintiff complains that Dr. Cybulski's testimony should have been barred because defendants did not disclose his testimony until October 6, 2000, just 31 days before the date the matter was originally set for trial on November 6, 2000.

■ We conclude, however, that defendants timely disclosed Dr. Cybulski as an opinion witness by (1) divulging their intention to rely on the Rule 213(g) disclosures of codefendant Hinsdale Hospital within the time frame set by the trial court and (2) later supplementing their disclosures pursuant to Rule 213(i).

The record discloses that on April 27, 2000, the trial court entered an order setting a trial date of November 6, 2000. At that time, the court also ordered Dr. Glaser, Hinsdale Hospital, and Hinsdale Anesthesia Associates, Ltd., to answer Rule 213(g) interrogatories by September 6, 2000. On July 27, 2000, the trial court, apparently with the consent of plaintiff's attorney, entered an order extending the date for defendants and codefendant Hinsdale Hospital to answer the Rule 213(g) interrogatories until September 20, 2000.

The record suggests that defendants filed their answer to plaintiff's Rule 213 interrogatories separately from Hinsdale Hospital. Plaintiff concedes that defendants and Hinsdale Hospital timely filed their answers on September 20, 2000. In their answers, Dr. Glaser and Hinsdale Anesthesia Associates, Ltd., identified three expert witnesses: Dr. Glaser, Dr. Jeffrey Vender, and Dr. Chris Costas. In addition, defendants stated that they "adopt[ ] and rel[y] upon the Rule 213(f) and (g) witnesses and their respective opinions as disclosed by the codefendant in this matter." Although we have been unable to locate Hinsdale Hospital's answers to plaintiff's Rule 213(g) interrogatories in the record, the record does contain Hinsdale Hospital's supplemental answers to plaintiff's Rules 213(f) and (g) interrogatories. The supplemental answers contain the following paragraph:

"At the time of trial of this matter, Thorek Hospital [*sic*] may call the following witnesses to testify on its behalf. *In addition to the retained opinion witnesses, George Cybulski, M.D.*, Daniel Mather, M.D., and Ruth Ramsey, M.D., *whom [sic] have been identified through [Rule] 213(g) Supplemental answers to Opinion Interrogatories*, this Defendant identifies the following [Rules] 213(f) and (g) witnesses who may be called to testify at trial." (Emphasis added.)

At some point, plaintiff and Hinsdale Hospital began negotiations that culminated in a settlement. On October 6, 2000, defendants informed plaintiff that they were supplementing their Rule 213(g) disclosure to include Dr. Cybulski.

On October 17, 2000, plaintiff filed a motion seeking to bar Dr. Cybulski's testimony on the basis that defendants' disclosure of Dr. Cybulski as an opinion witness was untimely and prejudicial. The trial court denied plaintiff's motion. However, the trial court continued the trial date until January 17, 2001, and allowed plaintiff to retain a rebuttal witness to address the causation issues raised by Dr. Cybulski. Dr. Cybulski testified at trial on defendants' behalf.

Based on this evidence, we find that defendants' disclosure of Dr. Cybulski was timely. At the time defendants submitted their answers to plaintiff's Rule 213(g) interrogatories, the trial court reasonably anticipated commencing trial on November 6, 2000. See 177 Ill. 2d R. 213(i). For that reason, the court set September 6, 2000 (60 days before the trial date), as the final date for disclosing opinion witnesses. The court later extended the date of disclosure to September 20, 2000. Plaintiff concedes that this extension was granted with his consent and that defendants filed their answers on September 20, 2000. Moreover, since defendants also clearly stated in their answers to plaintiff's Rule 213(g) interrogatories their intention to rely on Hinsdale Hospital's Rule 213(g) witnesses, Dr. Cybulski was timely disclosed. We further note that defendants later supplemented their answers to plaintiff's Rule 213(g) interrogatories to specifically identify Dr. Cybulski. See 177 Ill. 2d R. 213(i). Under such circumstances, the purpose of Rule 213 disclosures was satisfied, and plaintiff cannot claim he was surprised.

Plaintiff, however, insists that the disclosure of Dr. Cybulski's opinions cannot be considered a "supplementation" because his opinions were never initially disclosed prior to October 2000. It is true that defendants did not disclose Dr. Cybulski's opinions. However, the reason for their failure to do so is evident. Defendants intended to rely on Hinsdale Hospital's answers to plaintiff's Rule 213(g) interrogatories. It appears from the record that, once it became clear that

Hinsdale Hospital and plaintiff began negotiating a settlement, defendants promptly filed a Rule 213(i) supplement to their answers to specifically name Dr. Cybulski and to disclose his opinions. Accordingly, we find that defendants' answer identifying Dr. Cybulski as an opinion witness constituted a supplementation for purposes of Rule 213(i). See *Henderson v. Illinois Central Gulf R.R. Co.*, 114 Ill. App. 3d 754, 757 (1983) (holding that it was error for the trial court to bar the testimony of one of the defendant's expert witnesses where the defendant did not decide to call the witness until after the plaintiff's request to supplement an interrogatory and where the defendant promptly and completely replied to the supplemental interrogatory).

Moreover, we note that the trial court alleviated any potential prejudice to plaintiff by granting him the opportunity to call a rebuttal witness in response to Dr. Cybulski's testimony and by extending the trial date. Accordingly, we conclude that the trial court's decision not to bar Dr. Cybulski's testimony on the ground that he was not timely disclosed did not constitute an abuse of discretion.

### b. *Bases*

Plaintiff further asserts that the trial court improperly allowed Dr. Cybulski's testimony because defendants failed to provide the bases for the doctor's opinions.

In their answers to plaintiff's Rule 213(g) interrogatories, defendants stated that Dr. Cybulski would testify that "it is more probably true than not true" that plaintiff's infection pre-existed Dr. Glaser's treatment and that plaintiff's infection was not causally related to the epidural injection. In addition, defendants stated:

> "Dr. Cybulski's opinions are based on his knowledge, education, training and experience in the field of neurosurgery. Dr. Cybulski has also reviewed all of plaintiff's pertinent medical records, including records from Hinsdale Hospital, Dr. Glaser and Dr. Zindrick."

Dr. Cybulski was the subject of a discovery deposition; however, his deposition is not part of the record. At trial, Dr. Cybulski opined that plaintiff's epidural abscess was present before Dr. Glaser performed the epidural injection on July 18, 1996. Dr. Cybulski relied on plaintiff's medical records, specifically noting that (1) on or about April 6, 1996, plaintiff began experiencing flank pain, which involved more than one nerve root; (2) plaintiff suffered from pain and numbness in his groin and the lateral portion of his thigh, which would involve several lumbar nerve roots; (3) tests done at the time demonstrated that plaintiff did not have a kidney stone or tumor; (4) plaintiff then underwent surgery for a possible hernia; (5) although a hernia was not found, a benign growth was removed; (6) despite the surgery, the pain persisted, and plaintiff underwent surgery to remove

a herniated disc; and (6) following the discectomy, the pain did not resolve and, in fact, worsened.

■ We find that plaintiff has failed to properly preserve this issue for review. The failure to object to allegedly improper evidence operates as a waiver to consider the issue on appeal. *People v. Mindham*, 253 Ill. App. 3d 792, 798 (1993). In this case, defendants never objected that the bases for Dr. Cybulski's opinion were inadequately disclosed. Indeed, although the record indicates that plaintiff interposed an objection when Dr. Cybulski was testifying about the bases for his opinion, the objection was not on the ground of inadequate disclosure. Thus, this issue has been waived. Even absent waiver, we would not find Dr. Cybulski's testimony improper. The Rule 213(g) interrogatories indicate that Dr. Cybulski reviewed plaintiff's medical records, and Dr. Cybulski based his opinion at trial on plaintiff's medical records.

### 2. Testimony of Dr. Chris Costas

Plaintiff next argues that the trial court erred by allowing undisclosed testimony from Dr. Chris Costas, an expert witness who testified on defendants' behalf.

In their answers to plaintiff's Rule 213(g) interrogatories, defendants asserted that Dr. Costas would:

> "opine regarding the issue of prophylactic antibiotics in relation to the treatment rendered by Dr. Glaser to [plaintiff] on July 18, 1996. Specifically, Dr. Costas will opine that from an infectious disease perspective, the standard of care in 1996 did not require the use of prophylactic oral and/or IV antibiotics for an epidural injection."

Defendants did not supplement their Rule 213(g) responses to include additional opinions to be rendered by Dr. Costas. Although Dr. Costas was deposed, his deposition was not made part of the record.

At trial, Dr. Costas testified that the standard of care in 1996 did not require Dr. Glaser to prescribe prophylactic antibiotics to plaintiff in connection with the epidural injection. On redirect, Dr. Costas testified that Dr. Zindrick placed plaintiff on a short course of prophylactic antibiotics at the time he performed plaintiff's discectomy. Defense counsel then asked Dr. Costas whether a course of antibiotics such as that administered by Dr. Zindrick could suppress a preexisting but unknown infection in another part of plaintiff's body. Plaintiff objected on the basis that defendant never disclosed that Dr. Costas would be offering such opinion testimony. The trial court overruled plaintiff's objection on the basis that plaintiff opened the door to such testimony. Dr. Costas then testified that administering antibiotics could have suppressed a preexisting but unknown infection in another part of plaintiff's body.

■ As we have previously noted, the purpose of Rule 213 is to avoid surprise and permit litigants to ascertain and rely upon the opinions of experts retained by the opposing party. *Becht v. Palac*, 317 Ill. App. 3d 1026, 1036 (2000). As such, Rule 213(g) (177 Ill. 2d R. 213(g)) requires a party to disclose the subject matter, conclusions, opinions, bases, qualifications, and all reports of a witness who will offer opinion testimony. *Schuler*, 313 Ill. App. 3d at 331. In addition, Rule 213(i) provides in pertinent part:

> "If a deposition of an opinion witness is taken, the witness' testimony at trial will be limited to the opinion expressed therein, in addition to those opinions identified in answers to Rule 213(g) interrogatories." 177 Ill. 2d R. 213(i).

A witness may elaborate on a disclosed opinion as long as the testimony states logical corollaries to the opinion, rather than new reasons for it. *Barton v. Chicago & North Western Transportation Co.*, 325 Ill. App. 3d 1005, 1039 (2001). In other words, the testimony at trial must be encompassed by the original opinion. *Prairie v. Snow Valley Health Resources, Inc.*, 324 Ill. App. 3d 568, 576 (2001). The trial court's ruling admitting such evidence will not be overturned on appeal absent an abuse of discretion. *Barton*, 325 Ill. App. 3d at 1039. In addition, we may affirm for any reason supported by the record regardless of the basis relied upon by the trial court. *Goldberg v. Michael*, 328 Ill. App. 3d 593, 597 (2002).

■ It is the burden of the appellant to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubts that may arise from the incompleteness of the record will be resolved against the appellant. *Foutch*, 99 Ill. 2d at 392. In this case, the record indicates that the parties deposed Dr. Costas. However, plaintiff has not included a copy of Dr. Costas's deposition in the record. Rule 213(i) provides that an opinion witness may testify at trial to those opinions disclosed during the witness's interrogatory or his deposition. 177 Ill. 2d R. 213(i). Thus, without Dr. Costas's deposition testimony, we cannot determine whether the complained-of opinion was previously disclosed. Accordingly, there is no basis to hold that the trial court abused its discretion in allowing Dr. Costas's testimony regarding the effect of antibiotics on a preexisting infection.

For the aforementioned reasons, we reverse the judgment of the circuit court of Du Page County and remand the cause for a new trial.

Reversed and remanded.

O'MALLEY and BYRNE, JJ., concur.