ANN McGOVERN, Plaintiff-Appellee, v. JAMES KANESHIRO, Defendant-Appellant.

First District (1st Division)    No. 1—01—0150

Opinion filed January 27, 2003.

26

Meade, Engleberg & Associates, of Chicago (Robert G. Lohman III, of counsel), for appellant.

Daniel W. Sherman, of Chicago, for appellee.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

James Kaneshiro (defendant) appeals from the judgment of the circuit court of Cook County in favor of Ann McGovern (plaintiff) in this personal injury action, entered following a jury trial. Defendant contends that the trial court erred by denying submission of his special interrogatory, which would have provided a check on the jury's assessment of plaintiff's contributory negligence. Defendant further contends that the trial court abused its discretion by allowing the jury to hear the testimony of plaintiff's two physicians because plaintiff failed to properly disclose the content of their testimony during discovery, in violation of Supreme Court Rule 213 (177 Ill. 2d R. 213). For the following reasons, we affirm.

## BACKGROUND

Testimony at trial from both plaintiff and defendant established that on May 9, 1996, each was in a separate car driving northbound on the Northwest Highway in Chicago, Illinois. The day was rainy and both parties had their windshield wipers on. Plaintiff's car was in the same lane as defendant's and was directly ahead of him. Ahead of plaintiff's car was a mini school bus driven by the employee of codefendant N&S Transportation—not a party to the instant appeal.

Plaintiff testified that the school bus came to a sudden stop without signaling and she abruptly applied her brakes and came to a stop just behind the bus. On cross-examination, defense counsel elicited evidence that plaintiff may have been aware that school buses turn left from the site of the accident into the school parking lot that abuts the Northwest Highway.

Upon seeing plaintiff's brake lights, defendant testified that he also applied his brakes, went into a skid and hit plaintiff's car from the rear. Plaintiff's car then slid into the rear of the school bus. Plaintiff testified that the top of her chest and her shoulders hit the steering wheel upon impact. Plaintiff also testified that she was wearing her seat belt at the time. She further testified that three weeks after the accident, she sought medical treatment from orthopedic surgeon Dr. Jorge Prieto.

In response to interrogatories submitted by defendant during discovery, plaintiff identified Dr. Prieto as a fact witness and indicated that there were, at that time, no opinion witnesses to be presented. In a supplement to interrogatories posed by codefendant N&S Transportation, plaintiff indicated that Dr. Prieto would provide opinion testimony on the cause of her injuries and on their permanency. A copy of this supplement was also provided to defendant. Dr. Prieto was the subject of both a discovery deposition and an evidence deposition, but the discovery deposition is not a part of the record.

Defendant objected to the admission of Dr. Prieto's testimony, alleging that the disclosure was insufficient under Rule 213. The trial judge allowed Dr. Prieto's opinion testimony on causation. Dr. Prieto's evidence deposition was then read at trial and his testimony indicated that he diagnosed plaintiff as having a rotator cuff injury and prescribed anesthetic injections and exercises. Several months later, Dr. Prieto ordered a scan of plaintiff's shoulder which revealed a rotator cuff tear. The record does not indicate that Dr. Prieto gave any testimony concerning permanency of plaintiff's injury.

Plaintiff also sought to have read into the record the evidence deposition of Dr. Marc Asselmeier, the orthopedic surgeon who ultimately performed surgery on her rotator cuff. Defendant again objected, arguing that Dr. Asselmeier's opinions were disclosed in the same defective manner as were Dr. Prieto's and, therefore, his testimony should be barred. The trial court held that the doctor's opinions about permanency were not properly disclosed and those opinions were redacted from the evidence deposition. Through the redacted evidence deposition, Dr. Asselmeier testified to the surgery he performed, stated that it was without complications, and discussed his postoperative assessment of plaintiff. Plaintiff and her husband did

testify to the pain and physical limitations that she experienced before and after surgery.

Prior to deliberations, defendant offered two special interrogatories to check the jury's verdict on plaintiff's contributory negligence. In his appellate brief, defendant provided a record citation for only one of these interrogatories, which read: "Was the Plaintiff immediately before and at the time of the occurrence in question guilty of negligence which proximately contributed to cause her alleged injuries?" The trial court refused to tender the interrogatories. Notably, the jury instruction conference at which the interrogatories were discussed, and ultimately rejected by the trial court, is not a part of the record on appeal.

The jury awarded plaintiff a total amount of damages of $58,261.80, which was reduced to a recoverable amount of $46,609.44 based on its finding in the general verdict that she contributed 20% of the negligence which proximately caused the accident. The jury awarded zero damages for future pain and suffering. This appeal followed.

## ANALYSIS

### A. Special Interrogatories

First, defendant contends that the trial court erred in refusing to tender either of his two proposed special interrogatories on plaintiff's contributory negligence. Defendant argues that the interrogatories were in proper form and, thus, the trial court had no discretion to refuse to submit them to the jury. While we agree with defendant that the court erred in failing to submit the interrogatories, we find that this error was harmless.

■ As an initial matter, we note that defendant's brief lists two different interrogatories proposed to the trial court but the citation to the record provided by defendant mentions only one of the interrogatories. Because the transcript of the jury instruction conference was not provided to this court, and because defendant provides no citation to the text of the alternative proposed interrogatory,[1] we will only address the propriety of the cited interrogatory. The cited inter-

---

[1]The proposed interrogatory was apparently virtually identical to the cited interrogatory, differing only by substituting a definition of "negligence" for the word itself, and read: "Did the Plaintiff immediately before and at the time of the occurrence in question fail to exercise ordinary care for her own safety which proximately contributed to cause her alleged injuries?" Because the content and form of the two interrogatories are so similar, were this interrogatory properly before us, the following analysis would also apply to it.

rogatory read: "Was the Plaintiff immediately before and at the time of the occurrence in question guilty of negligence which proximately contributed to cause her alleged injuries?"

■ On another preliminary matter, we note that defendant's failure to include a transcript of or bystander's report for the jury instruction conference deprives this court of valuable information concerning the trial court's assessment of the interrogatory. Although plaintiff raises no claim of waiver, nor of any prejudice resulting from the incomplete record, we feel obligated to consider whether defendant's failure to provide a complete record waives his contentions on this point. An appellant has the burden of presenting this court with a sufficiently complete record of the lower court proceedings to support a claim of error. *La Salle National Bank v. City Suites, Inc.*, 325 Ill. App. 3d 780, 788, 758 N.E.2d 382, 389 (2001). Without a complete record, we may well be within our discretion to grant presumptive validity to the lower court's order. However, because the issues raised in this case involve questions of law, which are reviewed *de novo* (735 ILCS 5/2— 1108 (West 2000)) and, thus, are not inherently impacted by the failure to include the instruction conference colloquy, we may address the merits without a complete report of the proceedings. *McNames v. Rockford Park District*, 185 Ill. App. 3d 291, 293, 540 N.E.2d 1119, 1120 (1989) (absence of report of proceedings need not bar appellate review as the issue was solely a question of law). See also *Dubey v. Abam Building Corp.*, 266 Ill. App. 3d 44, 46, 639 N.E.2d 215, 217 (1994) (appellate court may address merits of case with incomplete record if determination can be made from that record); *Korogluyan v. Chicago Title & Trust Co.*, 213 Ill. App. 3d 622, 627-28, 572 N.E.2d 1154, 1159 (1991). Because the tender of special interrogatories provides the primary means by which parties can check a general verdict, we conclude that consideration of the merits in this case is appropriate.

■ Special interrogatories guard the integrity of a general verdict by testing that verdict against the jury's determination as to specific issues of ultimate fact. *Simmons v. Garces*, 198 Ill. 2d 541, 556 (2002) (special interrogatory was incompatible with general verdict and was controlling). In theory, "the jury more clearly comprehends a particularized special interrogatory than a composite of all questions in a case, and therefore, presumably, it focuses its attention on the question presented. This device is therefore used to check on the jury's deliberations." 3A C. Nichols, Nichols Illinois Civil Practice with Forms § 73.40, at 596 (rev. 1997). Special interrogatories are governed by section 2—1108 of the Code of Civil Procedure, which states:

"Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing." 735 ILCS 5/2—1108 (West 2000). Our courts have strictly interpreted the word "must" in the statute and held that a trial court has no discretion to reject a special interrogatory that is proper in form. See *Ewanic v. Pepper Construction Co.*, 305 Ill. App. 3d 564, 567-68, 712 N.E.2d 852, 854 (1999), citing *Morton v. City of Chicago*, 286 Ill. App. 3d 444, 451-52, 676 N.E.2d 985, 990 (1997). Our courts have concluded that the refusal to submit a proper interrogatory "may be deemed reversible error." *Van Hattem v. K mart Corp.*, 308 Ill. App. 3d 121, 132, 719 N.E.2d 212, 222 (1999); see also *Snyder v. Curran Township*, 281 Ill. App. 3d 56, 63, 666 N.E.2d 818, 823 (1996); *Vulcan Materials Co. v. Holzhauer*, 234 Ill. App. 3d 444, 452, 599 N.E.2d 449, 455 (1992). However, our courts have also reviewed a trial court's decision whether to submit a special interrogatory to a jury under a harmless error analysis. See *Meister v. Henson*, 253 Ill. App. 3d 619, 629-30, 625 N.E.2d 404, 411-12 (1993) (the submission of an improper special interrogatory may be reviewed under harmless error analysis); *Batterton v. Thurman*, 105 Ill. App. 3d 798, 803, 434 N.E.2d 1174, 1177 (1982) (same); see also *Snyder*, 281 Ill. App. 3d at 63-64, 666 N.E.2d at 824 (refusal to submit a special interrogatory is reversible error where the error is not harmless).

■ Our supreme court has recently reiterated the standards for proper interrogatory form, noting that the interrogatory must "relate[ ] to an ultimate issue of fact upon which the rights of the parties depend, and *** an answer responsive thereto [must be] inconsistent with some general verdict that might be returned." *Simmons*, 198 Ill. 2d at 563. Plaintiff argues that defendant's proposed interrogatory does not relate to an ultimate issue of material fact because such a general question of plaintiff's contributory negligence as defendant proposed could not have directly affected the parties' rights. As plaintiff conceives the issue, any contributory negligence of a plaintiff totaling less than 50% does not bar recovery and, thus, a general question of contributory negligence "yes or no" would not defeat a judgment for a plaintiff and not affect her rights. Plaintiff argues that, to relate to an ultimate issue and thus be proper in form, defendant's proposed special interrogatory needed to test not merely the fact of plaintiff's possible contributory negligence but whether it reached the 50% threshold and would bar recovery.

We note, however, that our courts have held that nonpercentage-specific interrogatories about plaintiff's contributory negligence are a

proper check on a general verdict. See generally *Santos v. Chicago Transit Authority*, 198 Ill. App. 3d 866, 556 N.E.2d 607 (1990); *Bernardi v. Chicago Steel Container Corp.*, 187 Ill. App. 3d 1010, 543 N.E.2d 1004 (1989); *Mudd v. Goldblatt Bros., Inc.*, 118 Ill. App. 3d 431, 454 N.E.2d 754 (1983). In *Mudd*, for example, this court approved a similar interrogatory, which read: " 'Do you find that plaintiff was, before and at the time of the occurrence, exercising ordinary care for his own safety so as to avoid proximately causing himself injury?' " *Mudd*, 118 Ill. App. 3d at 437, 454 N.E.2d at 758. The court went on to note that, as in this case, when there is a "factual question as to a plaintiff's conduct and its causal relationship to the injury in a negligence case, a special interrogatory on the question of contributory negligence is proper." *Mudd*, 118 Ill. App. 3d at 437, 454 N.E.2d at 758. Similarly, in *Bernardi*, the following interrogatory was given: " 'Do you find that [plaintiff] at the time of the occurrence was exercising ordinary care for his own safety as to avoid proximately causing himself injury?' " *Bernardi*, 187 Ill. App. 3d at 1016, 543 N.E.2d at 1008. In approving this interrogatory, this court went so far as to say that "the trial court must give a special interrogatory submitted by the defendant in proper form on the question of contributory negligence." *Bernardi*, 187 Ill. App. 3d at 1021, 543 N.E.2d at 1012. As these cases indicate, interrogatories similar to defendant's have been deemed proper, regardless of their inclusion of a percentage-specific component.

■ As to the second criterion for a proper interrogatory, we conclude that defendant's proposed interrogatory would have served as a check on the jury's verdict because an inconsistency between the answer to the interrogatory and the general verdict could result. For example, the jury verdict could attribute fault to the plaintiff, as it did in this case, and yet an interrogatory like defendant's could have been answered "no." Because the general verdict here encompassed more than just "liability" or "no liability" for defendant, but instead included percentages of fault, the interrogatory did not need to include a reference to the 49%-plus bar in order to be potentially inconsistent with the general verdict. Therefore, since defendant's proposed special interrogatory was proper in form, the trial court erred in refusing to submit it to the jury as required pursuant to section 2—1108 of the Code of Civil Procedure.

However, we do not agree with defendant that the trial court's error here requires reversal of the judgment entered or remand for retrial. To the contrary, we find that this error was, at most, harmless. See *Meister*, 253 Ill. App. 3d at 629-30, 625 N.E.2d at 411-12; accord *Batterton*, 105 Ill. App. 3d at 803, 434 N.E.2d at 1177. If the jury

would have answered "yes" to the interrogatory, thereby concluding that plaintiff contributed to the negligence here, it would have been required to determine the percentage of plaintiff's fault and apportion its verdict accordingly. Yet, the record reflects that the jury did exactly that—it reached a verdict setting the total amount of damages at $58,261.80, but then reduced it by 20% because it found that plaintiff had contributed 20% of the negligence which proximately caused the accident. Thus, the record clearly shows that the jury apportioned its award according to its belief that plaintiff was contributorily negligent, just as defendant's proposed interrogatory would have asked the jury to do. On the other hand, if the jury would have answered "no" to the special interrogatory, it would have concluded that plaintiff was not contributorily negligent at all. In this instance, the jury would have been required to award plaintiff the total amount of the damages determined, rather than a reduced sum, thereby increasing plaintiff's verdict at defendant's expense. Therefore, in either instance, submitting defendant's proposed special interrogatory to the jury would not have inured to defendant's benefit.

While *Meister* and *Batterton* involve the giving of an erroneous special interrogatory, there is little reason to treat the failure to give an otherwise appropriate special interrogatory differently. Argument may be made that since the purpose of a special interrogatory is to test the verdict, it would constitute reversible error to refuse a special interrogatory so long as there is any possibility for the verdict to be inconsistent with the special finding elicited by the interrogatory. See *Snyder*, 281 Ill. App. 3d at 64, 666 N.E.2d at 824. Under this approach the error would be reversible even if the totality of the evidence otherwise overwhelmingly favors the winning side. This may well be the case and would be consistent with the import of the decision in *Snyder*. However, even according to *Snyder*, there would be no basis upon which to apply such an analysis in the instant case where the verdict fully coincides with the response sought by the losing side.

In *Snyder*, the defendant sought to introduce a special interrogatory that asked if plaintiff were the sole proximate cause of his injury. The verdict of the jury was that he merely contributed to his injury but was not the sole proximate cause. Thus, in the event the special interrogatory in *Snyder* were given, it could have resulted in a disparity that would have favored its proponent. In this case, however, the special interrogatory sought only a determination as to whether the plaintiff's negligence contributed to his injury, which is precisely what the jury's verdict found in this case, namely, that the plaintiff was contributorily negligent. As noted the special interrogatory here made no attempt to elicit a percentage of any such contributory negligence.

Thus, in this case the giving of the special interrogatory would have accomplished nothing toward testing the verdict since the verdict was wholly in accord with the answer defendant could have hoped for had his proposed special interrogatory been given.

*Snyder* implicitly recognizes such distinction by stating that the special interrogatory in that case would in fact, have "check[ed] *** the accuracy of the general verdict *** [and] that the court's error in refusing to give the interrogatory *was not harmless.*" (Emphasis added.) See *Snyder*, 281 Ill. App. 3d at 64, 666 N.E.2d at 824. Thus, *Snyder*, by its own reasoning, does not foreclose a harmless error analysis where, as in this case, a favorable response to the special interrogatory, had it been given, would be wholly identical and coextensive with the verdict rendered and would have contributed nothing toward testing its accuracy.

In so holding we do not mean to sanction a broad-ranging harmless error analysis to simply permit the court to examine the total body of evidence which supports the verdict and to conclude that the wrongful omission of a special interrogatory will not be reversible simply because the evidence supporting the verdict is substantial. This may well be the case with respect to the omission of an otherwise warranted instruction. See *People v. Lewis*, 165 Ill. 2d 305, 349 (1995) (error in refusing to give an instruction will be deemed harmless if it does not affect outcome of verdict). However, we do not purport to extend this approach to the refusal of a special interrogatory where the interrogatory would have tested the verdict. Rather, the focus of the harmless error analysis with respect to the refusal of a special interrogatory would be to determine whether there could have been a disparity favoring the losing side, between the hoped-for answer of the jury to the interrogatory and its ultimate verdict. In this case no such disparity favoring the appellant was possible since the interrogatory asked only if plaintiff was contributorily negligent and such a finding was precisely the finding of the verdict that the jury rendered. To hold such error to be reversible under these circumstances would constitute a meaningless triumph of form over substance.

Based on these facts, we hold that the court's failure to submit the proposed special interrogatory resulted only in harmless error and does not warrant reversal.

## B. Rule 213 Violations

Defendant's remaining contentions on appeal focus on Rule 213(g). First, he contends that the trial court erred in allowing the testimony of Dr. Asselmeier and Dr. Prieto because plaintiff failed to adequately disclose these physicians as opinion witnesses in Rule 213(g) inter-

rogatories during discovery. Second, defendant contends that even if the trial court did not err in refusing to bar the physicians' testimony *in toto*, it committed reversible error by allowing their opinion testimony. We disagree with both contentions.

■ We again note as an initial matter in our treatment of the substantive issues of this cause the deficiencies in defendant's brief with respect to the record on appeal. Defendant, as appellant, was required to provide this court with a sufficiently complete record to support his claims of Rule 213(g) errors. See *La Salle National Bank*, 325 Ill. App. 3d at 788, 758 N.E.2d at 389. Like the first issue of defendant's special interrogatory dealt with above, missing from the record are various documents that would have provided this court with valuable information concerning his alleged Rule 213(g) errors, the most important of which are the physicians' discovery depositions. However, unlike the first issue, which involved questions of law, defendant's contentions of Rule 213(g) errors fall under an abuse of discretion standard, not a *de novo* one. See *Scassifero v. Glaser*, 333 Ill. App. 3d 846, 855, 776 N.E.2d 859, 867 (2002) (matters pertaining to Rule 213(g) disclosures of opinion witnesses, and the admission or barring of their testimony, are within trial court's discretion and will not be reversed absent abuse); see also *Athans v. Williams*, 327 Ill. App. 3d 700, 703, 764 N.E.2d 586, 589 (2002). Therefore, we could well presume that the trial court's admission of the physicians' testimony conformed to the law and was proper. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). However, even choosing to address the merits of defendant's alleged Rule 213(g) violations based on the record before us, we nevertheless find that they fail.

■ Rule 213(g) mandates that upon written interrogatory, a party must disclose the subject matter, conclusions, opinions, bases, qualifications and reports of any witness who will offer opinion testimony at trial. See 177 Ill. 2d R. 213(g); *Scassifero*, 333 Ill. App. 3d at 855, 776 N.E.2d at 867. In addition, Rule 213(i) requires a party to seasonably supplement his discovery responses, including the disclosure of opinion witnesses, whenever new information becomes known to him. See 177 Ill. 2d R. 213(i); *Scassifero*, 333 Ill. App. 3d at 855, 776 N.E.2d at 867. The purposes of these discovery rules "are to avoid surprise and discourage tactical gamesmanship." *Scassifero*, 333 Ill. App. 3d at 854-55, 776 N.E.2d at 867. The rules are mandatory and must be strictly followed by both the trial court that must impose them and counsel who must operate pursuant to them during discovery. *Scassifero*, 333 Ill. App. 3d at 854, 776 N.E.2d at 867.

Barring the Physicians' Testimony *in toto*

■ Defendant's first contention with respect to Rule 213(g) is that

the trial court erred in allowing Dr. Asselmeier and Dr. Prieto to testify at all in this cause. Defendant claims that the court should have barred their entire testimony because plaintiff did not properly disclose them as opinion witnesses in Rule 213 interrogatories. We disagree for several reasons, finding no violation of the rule on the part of plaintiff based on what occurred in the instant case.

As defendant points out in his brief, and as is clear from the record presented, plaintiff initially answered two sets of Rule 213 interrogatories during discovery—one from defendant and one from codefendant N&S Transportation—which both asked her to identify any opinion witnesses and provide the subject matter, conclusions, opinions, qualifications and reports pursuant to Rule 213(g). Plaintiff responded to both defendant and codefendant, in separate answers, that she had no opinion witness at that time but reserved the right to name one at a later date. Plaintiff later supplemented her original answers to codefendant's Rule 213 interrogatories, naming Dr. Asselmeier and Dr. Prieto as opinion witnesses who would testify as to her injuries and their cause and permanency as described in their discovery depositions, which had already been taken by this time.

Defendant now asserts that plaintiff's failure to supplement his Rule 213 interrogatories violated this rule. While plaintiff did not specifically supplement defendant's Rule 213 interrogatories, plaintiff did provide defendant with a copy of her supplemental answers to codefendant's interrogatories wherein she disclosed Dr. Asselmeier and Dr. Prieto as opinion witnesses. Upon examination of defendant's and codefendant's Rule 213 interrogatories, we note that they are virtually the same with respect to demanding that plaintiff reveal all opinion witnesses who would testify on her behalf, as well as their opinions, qualifications, conclusions and reports. That plaintiff did not separately write out supplemental answers to defendant's Rule 213 interrogatories is of no consequence here. Plaintiff provided defendant with her supplemental answers to codefendant's Rule 213 interrogatories, which asked her for the same information as defendant's Rule 213 interrogatories.

Several other factors gleaned from the record also support our conclusion here that plaintiff did not violate Rule 213(g)'s disclosure requirements in this case. First, early on in the discovery process, plaintiff disclosed Dr. Asselmeier and Dr. Prieto as her treating physicians in general interrogatories exchanged among the parties and attached all their medical records with respect to her injury. While we note that with the elimination of former Supreme Court Rule 220 there no longer is a distinction between treating physicians and opinion witnesses, we believe this fact to be of some import here. See

177 Ill. 2d R. 213(g), Committee Comments, at xxx; *Spain v. Owens Corning Fiberglass Corp.*, 304 Ill. App. 3d 356, 368, 710 N.E.2d 528, 537 (1999) (principal that treating physicians are excepted from requirement of disclosure has now been abandoned). As noted earlier, the purpose of Rule 213 is to prevent one party from surprising his opponent with undisclosed testimony. See *Scassifero*, 333 Ill. App. 3d at 854-55, 776 N.E.2d at 867. In the instant case, defendant knew early on of Dr. Asselmeier's and Dr. Prieto's existence and their role as plaintiff's medical providers. Defendant's claims that he was sandbagged by their testimony at trial are severely weakened by this fact. Moreover, defendant was clearly aware that discovery depositions would be taken of both physicians. In his brief, defendant asserts that neither he nor his attorney participated in Dr. Prieto's deposition. The record, however, shows that defendant's attorney was in attendance. As for Dr. Asselmeier's deposition, defendant's counsel at oral arguments before this court could not confirm or deny that defendant was represented at that deposition. Even if defendant was not at Dr. Asselmeier's deposition, at the very least, documents in the record show that defendant knew that this discovery deposition would be taken— the trial court, in the presence of the plaintiff as well as defendant, ordered these depositions and notice of the depositions of both physicians was given to defendant. It was after these depositions that plaintiff made her supplemental Rule 213 disclosures. Again, we find it difficult to entertain defendant's claims of surprise. See *Seef v. Ingalls Memorial Hospital*, 311 Ill. App. 3d 7, 21, 724 N.E.2d 115, 126 (1999) (opinions expressed in deposition need not be specifically identified later in Rule 213(g) answers). A final factor supporting our conclusion here is that defendant himself named both physicians as opinion witnesses in his answers to plaintiff's Rule 213(g) interrogatories, stating that they would be testifying on his behalf. Although we note that it is plaintiff's answers, not defendant's, upon which we must focus, the fact that defendant himself listed Dr. Asselmeier and Dr. Prieto as opinion witnesses again shows that he knew they likely would be testifying in this cause. From all this, defendant's contention that the physicians should have been entirely barred from testifying must fail.

■ Finally, even if we were to conclude that plaintiff did not properly disclose Dr. Asselmeier and Dr. Prieto as opinion witnesses in violation of Rule 213(g), a complete bar of their testimony at trial, as defendant urges, would have been wholly inappropriate. Supreme Court Rule 219 (166 Ill. 2d R. 219) allows the trial court to bar a party's opinion witness from testifying as a sanction for that party's failure to comply with the disclosure requirement of Rule 213(g). See

*Athans*, 327 Ill. App. 3d at 703, 764 N.E.2d at 589. Barring an opinion witness's testimony *in toto*, however, is a drastic sanction and should be exercised with caution. See *Curran Contracting Co. v. Woodland Hills Development Co.*, 235 Ill. App. 3d 406, 412, 602 N.E.2d 497, 501 (1992). In determining whether barring the opinion witness is a proper sanction, the court must consider the following factors: "(1) the surprise to the adverse party; (2) the prejudicial effect of the testimony; (3) the nature of the testimony; (4) the diligence of the adverse party; (5) the timely objection to the testimony; and (6) the good faith of the party calling the witness." *Athans*, 327 Ill. App. 3d at 703, 764 N.E.2d at 589; *Curran*, 235 Ill. App. 3d at 411, 602 N.E.2d at 500-01. Upon review of these factors with respect to the instant case, we find that the sanction of barring Dr. Asselmeier and Dr. Prieto from testifying *in toto* would have been an abuse of discretion.

■ First, as discussed above, we do not believe defendant was surprised by the physicians testifying at trial. Plaintiff sent a copy of her supplemental Rule 213 disclosure to defendant, the physicians were named in general interrogatories, defendant received notice of the physicians' depositions and participated in at least one of them, and defendant himself named these very physicians as opinion witnesses in his own Rule 213 interrogatory answers. Second, we do not believe the physicians' testimony was especially prejudicial. Plaintiff noted in her supplemental disclosure that the physicians would be testifying as to her injuries and their cause and permanency based on their discovery depositions. Again, defendant had notice of and attended these depositions. After the depositions were taken, plaintiff was not required to later specifically identify in new Rule 213(g) answers the opinions expressed in the depositions. See *Seef*, 311 Ill. App. 3d at 21, 724 N.E.2d at 126. Moreover, as will be discussed in further detail below, defendant does not specify what opinions in either of the physicians' testimony were so prejudicial that they called for the complete bar of their entire testimony. The third factor is clearly related to these facts—from plaintiff's supplemental answers, defendant's notice of and participation in the depositions and defendant's lack of specificity, we do not see how the nature of the physicians' testimony so prejudiced defendant as to warrant a complete bar. The fourth factor is the diligence of the adverse party, and we believe that the impact of this is minimal here. There is no contention or indication in the record that defendant was somehow lax in the discovery process or litigation of this case with respect to Rule 213(g) issues. However, the argument could be made against defendant that any failure on his part to attend Dr. Asselmeier's discovery deposition, if this in fact occurred, showed a lack of diligence as he was duly noti-

fied of the deposition. We note, with respect to the fifth factor, defendant did object to the physicians' testimony at trial. But while this favors defendant, we believe the sixth factor of good faith favors plaintiff. She disclosed Dr. Asselmeier and Dr. Prieto as treating physicians in general interrogatories and attached their records, reserving the right to name opinion witnesses later. More importantly, after the depositions, she supplemented her answers to codefendant's Rule 213(g) interrogatories to specifically name the physicians as opinion witnesses and she provided a copy of this to defendant, even though she was not required to do so. See *Seef*, 311 Ill. App. 3d at 21, 724 N.E.2d at 126. Therefore, because the above factors weigh principally in favor of plaintiff, the sanction of completely barring the physicians' testimony, as defendant proposes, was not warranted by the trial court. See *Athans*, 327 Ill. App. 3d at 703-04, 764 N.E.2d at 589-90 (sanction of striking testimony *in toto* was abuse of discretion where there was no surprise or prejudice to adverse party); *Curran*, 235 Ill. App. 3d at 411-12, 602 N.E.2d at 501 (although some factors weighed in adverse party's favor, barring testimony of opinion witness was still not warranted).

Barring the Physicians' Opinion Testimony

Finally, we address defendant's remaining Rule 213(g) contention that even if it was proper to allow Dr. Asselmeier and Dr. Prieto to testify, the trial court committed reversible error by allowing their opinion testimony, especially those opinions addressing the permanency of plaintiff's injuries. First, we note that defendant fails to include relevant citations to the record in his brief directing us to the physicians' alleged opinion testimony. In fact, defendant never makes clear exactly which opinions Dr. Asselmeier and Dr. Prieto testified to at trial that he now believes were erroneously admitted. Thus, his contention is waived for purposes of this appeal pursuant to his failure to comply with Supreme Court Rule 341. See 177 Ill. 2d R. 341; *In re Marriage of Hindenburg*, 227 Ill. App. 3d 228, 232, 591 N.E.2d 67, 70 (1992) (when argument on appeal requires examination of the record, failure to include citations waives the issue); *Coffey v. Hancock*, 122 Ill. App. 3d 442, 444, 461 N.E.2d 64, 66 (1984) (our court "is not a depository in which an appellant may dump its arguments without factual foundation in hopes that we will sift through the entire record to find support for a determination favorable to appellant's position").

Second, it seems from defendant's brief that his principal argument here is that the trial court allowed the physicians to give their opinions at trial about the permanency of plaintiff's injuries. However, we find nothing in the record supporting this claim. Before trial, the

court granted defendant's motion *in limine* barring any testimony regarding the permanency of plaintiff's injuries. Upon our own review of the trial transcript, we cannot find any reference by either Dr. Asselmeier or Dr. Prieto to the permanency of plaintiff's injuries anywhere in their trial testimony. The physicians may have discussed this in their discovery depositions, but neither deposition is included in the record, and thus, we have no way to compare their testimony to those depositions. But even this is of little consequence, as again, there is nothing in the record to indicate that either physician testified as to permanency of plaintiff's injuries at trial. At one point during Dr. Asselmeier's testimony, he does make reference to the term "residual disability." At oral argument (but not in his brief), defendant alleged that this reference is the same as "permanency." Even were this so, defendant takes the phrase out of context. The transcript of Dr. Asselmeier's testimony clearly reveals that "residual disability" was something he told plaintiff before her surgery she may experience as a postsurgical side effect common to those who undergo surgery to repair rotator cuffs. Dr. Asselmeier was speaking of residual disability in general terms and never stated that plaintiff actually experienced this. Most significant to defendant's claim here is that the jury returned an award of zero damages for future pain and suffering to plaintiff. Therefore, even if there was a mention of permanency or a reference alluding thereto, it resulted in harmless error.

Defendant makes two final cursory arguments related to his claims of permanency. One comprises defendant's allegation that the court erred in allowing Dr. Asselmeier to give testimony about permanency with respect to a "recent examination" of plaintiff. It appears from the record that Dr. Asselmeier did examine plaintiff, upon her own request, at some point during his evidence deposition, as it was conducted over two days. However, Dr. Asselmeier's testimony regarding this examination had nothing to do with her injuries in this case; he clarified during his testimony regarding this examination that plaintiff suffered an injury completely separate from that involved in the instant case that had nothing to do with her rotator cuff or the accident involved here. More importantly, again, his testimony regarding this examination never mentioned the permanency of any of plaintiff's injuries. Defendant also makes the cursory argument that the trial court committed reversible error by allowing plaintiff to introduce life tables into evidence. Defendant claims that these "were only admitted due to the improper testimony as to future pain and suffering and permanency by Dr. Asselmeier." Before trial, the parties discussed the introduction of life tables with the trial court, which ruled that they could be admitted only in relation to plaintiff's own testimony, and

40

that of her husband, about the way her injuries affected her. This ruling was not in error (see *Ziencina v. County of Cook*, 188 Ill. 2d 1, 16 (1999)), and plaintiff abided by it. Even if it was erroneous to admit these tables, the jury's award of zero damages for future pain and suffering demonstrates that any error was harmless. Moreover, again, defendant fails to provide citations to the "improper testimony" of Dr. Asselmeier with respect to "future pain and suffering and permanency." Nor do we find any such testimony in the record on review. Therefore, we find defendant's contentions that the trial court should have barred the physicians' opinion testimony, especially that concerning permanency, unsupported.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

CAHILL and BURKE, JJ., concur.